## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:15cv1442 |
| | : | |
| Plaintiff, | : | Judge Jackson |
| | : | |
| *ex rel.* | : | |
| | : | **AMENDED COMPLAINT** |
| JOHN FORSYTHE | : | |
| | : | **Jury Trial Demanded** |
| | : | |
| Relator, | : | |
| | : | **Filed Under Seal Pursuant to** |
| v. | : | **31 U.S.C. § 3730(b)(2)** |
| | : | |
| GARLAND INDUSTRIES, INC. | : | |
| | : | |
| THE GARLAND COMPANY, INC. | : | |
| | : | |
| INNOVATIVE METALS COMPANY, INC.: | | |
| | : | |
| DESIGN-BUILD SOLUTIONS, INC. | : | |
| | : | |
| GMX, INC. | : | |
| | : | |
| and | : | |
| | : | |
| COMMERCIAL INNOVATIONS, INC. | : | |
| | : | |
| Defendants. | : | |

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     JURISDICTION AND VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.     Garland Company's Federal Government Contracts . . . . . . . . . . . . . . . . . . . . . 6

        B.     The GSA Federal Supply Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.     Garland Company Offered Significantly Higher Prices to Government
               Customers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

               1.   Imetco-Labeled Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

               2.   GMX and Commercial Innovations-Labeled Products . . . . . . . . . . . . . . . 13

                    a) Garland Garla-Prime v. GMX Ultra-Shield Self-Stick Primer . . . . . . 13
                    b) Garland Aero-Block WB and SB v. GMX Ultra-Shield WB and
                       SB Waterproofing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
                    c) Garland Aero-Block SA v. GMX Ultra-Shield Self-Stick Membrane  13
                    d) Garland Silver-Shield v. Commercial Viking Sun Shield Fibered . . . 14
                    e) Commercial Innovations' Cool Topper v. Garland Company's
                       Pyramic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                    f) Commercial Innovations' Ultra-Shield Torch Base Membrane v.
                       Garland's HPR Torch Base Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

        D.     Garland Industries and Garland Company Manipulated Their Corporate Structure
               to Ensure that Private Customers Received Better Value than the Government . 15

        E.     Garland Company Failed to Provide Accurate Pricing Information to
               the Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        F.     Garland Company Failed to Offer Federal Government Discounts
               Provided to Commercial Purchasers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        G.     Garland Industries' and Garland Company's Anti-Competitive Conduct Subverts
               the Government's Procurement Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        H.     Garland Company Misrepresented Services as Appropriate for the
               GSA Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

COUNT I
False Claims Act - Presentation of False Claims
31 U.S.C. § 3729(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

COUNT II
False Claims Act - Making or Using False Records or Statements to Cause Claim to be Paid
31 U.S.C. § 3729(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

COUNT III
False Claims Act - Making or Using False Records or Statements to Conceal, Avoid and
Decrease Obligation to Repay Money
31 U.S.C. § 3729(a)(1)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

COUNT IV
False Claims Act - Conspiracy
31 U.S.C. § 3729(a)(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Qui tam* Relator John Forsythe, through his undersigned attorneys and on behalf of the United States of America, brings this action against Defendants Garland Industries, Inc. and its wholly owned subsidiaries: The Garland Company, Inc. ("Garland Company"), Innovative Metals Company, Inc. ("Imetco"), Design-Build Solutions, Inc., GMX, Inc., and Commercial Innovations, Inc. to recover damages and civil penalties arising from false or fraudulent statements, records and claims made or caused to be made by Defendants or their agents and employees to the United States Government.

Garland Industries, Inc. and Garland Company manipulated their corporate structure to market and sell identical construction and building products to the Government and private customers, but bearing different labels and different prices. Garland Company offers products on the General Services Administration ("GSA") Schedule that are manufactured by Imetco. These products all have a Garland label. Garland Company, Inc. and Design-Build Solutions, Inc. then install these items for Federal Government customers. But Imetco, Commercial Innovations, and GMX, Inc. sell the same or substantially similar products to their commercial, non-governmental customers, with their own label, at a far cheaper price than the Garland Company-labeled ("Garland-labeled") parts sold to the Federal Government. Defendants' actions violated the pricing requirements of their GSA contract as they charged these Government customers more than private customers for the same or similar products.

On behalf of the United States of America, Relator alleges for his Complaint against Defendants as follows:

1

## I.   INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United States Government arising from false statements, records and claims made and presented or caused to be made and presented by Defendants and their agents and employees in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.     The False Claims Act provides that any person who knowingly submits or causes to be submitted a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of not less than $5,500 and not more than $11,000 for each such violation, plus three times the amount of the damages sustained by the Government. Liability attaches both to the acts of knowingly seeking unwarranted payment from the Government and knowingly creating or causing to be created false statements or records to conceal, avoid, or decrease an obligation to pay or transmit money to the Government. The False Claims Act provides that any person having information regarding a false or fraudulent claim against the Government may bring an action for himself and the Government and share in any recovery.

3.     Relator John Forsythe seeks to recover False Claims Act damages and civil penalties on behalf of the Government arising from Defendants' presentation of false claims, records, and statements to the Government and its agents in connection with Defendants' claims for payment for products and services provided pursuant to Defendants' Government contracts, including with the GSA. Defendants knowingly violated the False Claims Act by the following acts, *inter alia*:

> a.     Offering more favorable pricing to private customers than to Government customers, despite best pricing representations to the Government;

      b.      Restricting subcontractor sales to the Government with the result that the Government was treated differently than other customers and paid higher prices than did private customers;

      c.      Misrepresenting its commercial sales practices from which the Government could form a basis of negotiation;

      d.      Failing to inform the Government of the cheaper prices offered by subsidiaries for the identical or substantially similar products; and

      e.      Engaging in a scheme to eliminate competition.

4.      Defendants Garland Industries, Inc., Garland Company, Inc., Imetco, Design-Build Solutions, Inc., Commercial Innovations, and GMX, Inc. violated the False Claims Act by engaging in these same illegal practices on projects that received funding from the Federal Government through the 2009 American Reinvestment and Recovery Act (ARRA).

## II.     JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3732 and 28 U.S.C. § 1367. The False Claims Act, 31 U.S.C. § 3732, confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730.

6.      This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process because Defendants transacted business in this District and committed acts proscribed by 31 U.S.C. § 3729 in this District.

7.      Venue is proper in the District of Columbia pursuant to 31 U.S.C. § 3732(a) because Defendants transacted business in this District and committed acts proscribed by 31 U.S.C. § 729 in this District.

8.     In accordance with 31 U.S.C. § 3730(b)(2), this Amended Complaint has been filed under seal and will remain under seal for a period of at least sixty (60) days from its filing date and shall not be unsealed and served upon the Defendants until the Court so orders.

III.    PARTIES

9.     Relator John Forsythe is a United States citizen and a resident of Texas. John Forsythe has over 12 years of construction management experience. He is co-owner of Forsythe Brothers Infrastructure, LLC, a small general contractor specializing in civil and general building repair projects. Relator John Forsythe bases the allegations in his complaint upon his experience working with Garland Company on a project in Texas and his industry experience.

10.    Garland Industries, Inc. ("Garland Industries") is a Cleveland, Ohio based manufacturer of building products for commercial, industrial, and public buildings. The company builds and modifies roofing systems, manufactures architectural and structural metal products, and provides maintenance, renovation, and restoration systems. Garland Industries is headquartered at 3800 E. 91st Street, Cleveland, OH 44105. Garland Industries has various wholly owned subsidiaries, including Garland Company, Inc., Imetco, Design-Build Solutions, Inc, GMX, Inc., and Commercial Innovations, Inc.

11.    The Garland Company, Inc. ("Garland Company") is a Cleveland, Ohio based wholly owned subsidiary of Garland Industries, Inc. with the same address as its parent company. Garland Company has a comprehensive Federal Government program and provides goods and services to the Government through GSA Federal Supply Schedules. Garland Company has provided goods and services to Government customers through the GSA schedule for many

4

years, including through its most recent GSA Schedule Contract, which expires January 19, 2020. Garland Company sells products manufactured by other wholly owned subsidiaries of Garland Industries, including Imetco, to Government customers on the GSA schedule.

12.     Imetco is a Georgia based wholly owned subsidiary of Garland Industries. Imetco manufactures metal building products that Garland Company sells on the GSA schedule. GSA listed products include standing seam metal roofing systems, metal wall panels, fascia and coping systems, and other accessory products. Imetco offers its products to private customers. Imetco is headquartered at 4648 S. Old Peachtree Rd. Norcross, GA 30071. Garland Industries purchased Imetco in 1994.

13.     Design-Build Solutions, Inc. ("Design-Build Solutions") is a Cleveland, Ohio based architectural, design, engineering, and general contracting firm and wholly owned subsidiary of Garland Industries. Design-Build Solutions previously held a GSA contract to provide building and construction materials, products, and services to Government customers. It used Garland Company building and construction materials, products, and services materials listed on the GSA Schedule to fulfill its contracts. Currently it provides installation services for all materials listed on Garland Company's GSA Schedule, as well as for private customers and state and local contracts. Design-Build Solutions was created by Garland Industries in 2001. Design-Build Solutions has the same mailing address as Garland Industries and Garland Company.

14.     Defendant GMX, Inc. ("GMX") sells building products, including air barriers, waterproofing products, and insulation, to private customers. Many GMX products are marketed to protect roofs and exterior walls. A wholly-owned subsidiary of Garland Industries, GMX sells

5

waterproofing products to residential markets, and metal and built up roof restoration products to industrial and commercial construction markets. In 2013, Garland Industries purchased DryDog Barriers, LLC of Charlotte, North Carolina and merged the company with GMX in order to expand its line of waterproofing products. DryDog Barriers continues to sell its products to commercial and residential customers. GMX is located at the same address as Garland Industries and Garland Company.

15.    Commercial Innovations, Inc. ("Commercial Innovations") sells building products, including air barriers, waterproofing products, and insulation, to private customers. Like GMX products, many Commercial Innovation products are marketed to protect roofs and exterior walls. Since 2006, Commercial Innovations has been located adjacent to Garland Industries and GMX at: 3812 East 91st Street, Cleveland, Ohio 44105.

## IV.    FACTUAL ALLEGATIONS

### A.    Garland Company's Federal Government Contracts.

16.    Garland Company and Design-Build Solutions participate in the GSA Federal Supply Schedule program. The GSA Federal Supply Schedule links federal agencies with non-governmental entities to provide the Federal Government with the "best value" when it purchases goods and services that are also routinely sold to private customers. In order to ensure that the Government is not overcharged, the GSA negotiates Federal Supply Schedule contracts and other contracts with suppliers of commercial products and services, such as Garland Company.

17.    GSA establishes procedures that govern the Multiple Award Schedule ("MAS") program, including the requirements that suppliers must follow in order to participate in the

program. 40 U.S.C. §§ 121(c), 501(b)(2). These rules and regulations are set forth in the Federal

Acquisition Regulation and the General Services Administration Acquisition Regulation.

18.    Garland Company's federal contracts are subject to the Federal Acquisition

Regulations' ("FAR") requirement that there be full and open competition in the Government's

purchases of commercial products and services. 48 C.F.R. § 6.101. Likewise, all Garland

Company contracts with the Government, whether through the GSA Federal Supply Schedule or

otherwise, are subject to the requirements of full and open competition. 41 U.S.C. § 3301. GSA

Schedule contracting procedures are "competitive" if "orders and contracts under those

procedures result in the lowest overall cost alternative to meet the needs of the Federal

Government." 41 U.S.C. § 152.

19.    Categories of commercial products and services offered under Federal Supply

Schedule MAS contracts are assigned Special Item Numbers ("SINs"). Pursuant to its GSA

Supply Schedule for Construction and Building Materials, Garland Company sells Roofing

Materials (SIN 563 4), Access Flooring (SIN 563 6), Alternative and Renewable Energy

Solutions (SIN 206 3), Installation and Site Preparation Services (SIN 412 51), and Power

Systems Engineering Support (SIN 412052).

20.    Garland Company and Design-Build Solutions have provided building and

construction goods and services to numerous government agencies, with contracts totaling over

$30 million. Their customers include: the Department of Defense; Department of Veteran

Affairs; Department of the Interior; Department of Labor; Department of Transportation; Army

National Guard; and the General Services Administration.

7

21.     Garland Company and Design-Build Solutions have provided building and construction goods and services on many stimulus projects funded by the ARRA, including projects funded by the Departments of Energy and Defense, and the General Service Administration.

22.     Garland Company and Design-Build Solutions provided building and construction goods and services to the Federal Government on buildings across the country.

**B.      The GSA Federal Supply Schedule.**

23.     Under GSA regulations, commercial suppliers' Federal Supply Schedules are to be based on established commercial sales practices which the Government uses to negotiate "most favored customer" pricing when compared to ordinary commercial transactions made under similar circumstances. 48 C.F.R. §§ 515.408, 538.270. Once it is established that a manufacturer's or vendor's products are offered to commercial purchasers in sufficient quantities to establish a market tested commercial price, GSA's objective is to negotiate a pricing discount for Government purchasers below the vendor's established catalog or market prices. 48 C.F.R. § 538.270.

24.     In order for the Government to be able to negotiate meaningful terms with a prospective supplier, the supplier must provide the Government with information about how it actually prices its products for non-government purchasers. 48 C.F.R. § 515.408. This information, called Commercial Sales Practices, must be accurate, current, and complete. 48 C.F.R. § 15.403-3.

25.     The Commercial Sales Practices Format, as set forth in the GSA regulatory scheme, establishes certain cost and pricing information suppliers must provide to the GSA. 48

C.F.R. § 515.408(b). A would-be contractor must state for the Government whether, based on the contractor's standard commercial sales practices, the discounts offered to the Government are "equal to or better than [the supplier's] best price offered to any customer acquiring the same items." 48 C.F.R. § 515.408(b). If the contractor answers "No," it must then provide Commercial Sales Practices Format information for each customer that received a price at or better to that offered to the Government, and any changes to the price list and discounts offered. *Id*.

26.      Once GSA pricing is negotiated, the commercial supplier publishes a list or schedule of prices for products and services offered through the GSA program. The GSA Advantage website provides online access to the list of products and prices offered to Government customers.

27.      Federal agencies rely on the prices published on the GSA Advantage website to make purchasing decisions without having to engage in the time consuming and expensive process of independently determining whether a potential supplier is offering the purchasing agency fair and reasonable pricing.

28.      With respect to Garland Company and Design-Build Solutions' responses to solicitations for Government jobs, whether through their GSA contracts or otherwise, Garland Company and Design-Build Solutions were on notice that the Government purchaser considered the cost to the Government as an evaluation factor. 41 U.S.C. § 253a(c).

**C.      Garland Company Offered Significantly Higher Prices to Government Customers.**

29.      On the GSA Advantage website, Garland Company offers a range of products that have a Garland label but are manufactured by Imetco. These products are exactly the same or substantially similar to products Imetco, Commercial Innovations, and GMX sell to private

9

customers. Garland-labeled products are made in the same factory, with the same equipment, and

the same employees as Imetco-labeled products. Commercial Innovations and GMX-labeled

products have the same specifications as Garland-labeled products and contain identical wording

in their product descriptions.

### 1. Imetco-Labeled Products

30.     At least 48 Garland-labeled products offered to the Government are priced

significantly lower when offered to private customers with an Imetco label. The inflated price to

the Government ranges from a 40% to 225% markup on each product, depending on the product.

These 48 products include the main components required for most roofing projects.

31.     The Garland-labeled products offered to the Government at inflated prices

include:

a)     R-Mer 1.5 Wall Panel 22 GA Standard Color;
b)     Tapered Hat Channel 22 GA;
c)     Flat Stock 22 GA, 48"x120";
d)     Wall Panel Sill Trim;
e)     Edge Stiffener 24 & 22 GA 10' Length;
f)     Shop Drawings;
g)     Bearing Plates-3"x5" 16 GA;
h)     Touch-up paint-4 oz can;
i)     Plastic Shims 1/16";
j)     Plastic Shims 1/8";
k)     Plastic Shims 1/4";
l)     1/8" Closed-End SS Rivets;
m)     TriPolymer Sealant;
n)     Butyl Sealant;
o)     Butyl Tape;
p)     R-Mer Loc 12" .32" Aluminum;
q)     R-Mer Loc 12" .40" Aluminum;
r)     R-Mer Loc 12" 24 GA Steel;
s)     R-Mer Loc 12" 24 GA Steel;
t)     R-mer Loc 12" 22 GA Steel (in Bare Galvalume or Standard Color);
u)     R-Mer Loc 16" .32" Aluminum;
v)     R-Mer Loc 16" .40" Aluminum;

w)	R-Mer Loc 16" 24 GA Steel (in Bare Galvalume or Standard Color);
x)	R-Mer Loc 16" 22 GA Steel (in Bare Galvalume or Standard Color);
y)	R-Mer Loc 18" .32" Aluminum;
z)	R-Mer Loc 18" .40" Aluminum;
aa)	R-Mer Loc 18" 24 GA Steel;
bb)	R-Mer Loc 18" 22 GA Steel (in Bare Galvalume or Standard Color);
cc)	R-Mer Loc LX 12" .32" Aluminum;
dd)	R-Mer Loc LX 12" .40" Aluminum;
ee)	R-Mer Loc LX 12" 24 GA Steel (in Bare Galvalume or Standard Color);
ff)	R-Mer Loc LX 12" 22 GA Steel (in Bare Galvalume or Standard Color);
gg)	R-Mer Loc LX 16" .32" Aluminum;
hh)	R-Mer Loc LX 16" .40" Aluminum;
ii)	R-Mer Loc LX 16" 24 GA Steel (in Bare Galvalume or Standard Color);
jj)	R-Mer Loc LX 16" 22 GA Steel;
kk)	R-Mer Loc LX 18" .32" Aluminum;
ll)	R-Mer Loc LX 18" .40" Aluminum;
mm)	R-Mer Loc LX 18" 24 GA Steel;
nn)	R-Mer Loc LX 18" 22 GA Steel (in Bare Galvalume or Standard Color).

32.	Some Garland-labeled products are virtually the same as their Imetco-labeled equivalent. For example, the Garland-labeled Flat Stock 22G 48"x120" is the same or substantially similar product as the Imetco-labeled Flat Sheet 22G 48"x120." They are so similar that when Relator John Forsythe submitted a substitution to replace the Garland-labeled product with the Imetco-labeled one, Garland Company accepted his proposal. But Garland Company's GSA price is $4.36 per square feet, while the Imetco price is $1.42 per square feet. Garland Company's GSA price is over 300% of the Imetco price and results in a 210% markup for the Federal Government on each product.

33.	Another example of a Garland-labeled product that is virtually the same as its Imetco-labeled equivalent is the Garland-labeled product "TriPolymer Sealant (Clear, 24 tubes per case)," offered on the GSA website for $287.27 per case. The Imetco-labeled product, "Sealant TriPolymer Clear Gunable" is offered with 24 tubes per case, but the Imetco-quoted

11

price is $166.40. Garland Company's GSA price is 173% more than the Imetco price, and results in a 73% markup to the Government on each product.

34.    Some products that Garland Company offers on the GSA website are inferior to the Imetco-labeled equivalent, yet they are offered for higher prices. For example, Garland Company offers its R-Mer 1.5 Wall Panel on the GSA website in 22 gauge, standard color, for $5.41 per square foot. The Imetco-labeled version, Perm Wall 1.5 Wall Panel in 22 gauge, stucco embossed, is offered for $2.44 per square foot to private customers. Garland Company GSA price is 222% more than the Imetco price and constitutes a 122% markup to the Government on each product. The Imetco-labeled product has embossed stucco, which is an extra process that adds value to the product and increases manufacturing costs. The product Garland Company lists on the GSA schedule appears not to have stucco embossment and is still significantly more expensive than the Imetco product.

35.    The Garland-labeled Tapered Hat Channel in 22 gauge metal is offered on the GSA Schedule for $36.91 - $44.89 each. In contrast, the Imetco-labeled equivalent is a Vented Hat Channel in 18 gauge metal, offered to private customers for $20.00 each. The Garland-labeled product costs 185 - 225% more, and results in an 85 - 124% markup to the Government on each product. The Imetco-labeled product offers higher value than the Garland-labeled product. The Imetco-labeled product has a lower gauge of metal than the Garland-labeled product. The lower the gauge, the thicker and more valuable the metal product. The Imetco-labeled product has a vent, which is an additional process that adds value to the product.

### 2. GMX and Commercial Innovations-Labeled Products

36.     GMX and Commercial Innovations sell construction products with the same specifications and identical wording in their product descriptions as their Garland-label equivalents. The Commercial Innovations/GMX products and their Garland Company equivalents are listed below:

#### a)   Garland Garla-Prime v. GMX Ultra-Shield Self-Stick Primer

37.     Garland Company product description for Garla-Prime and the GMX production description for Ultra-Shield Self-Stick are identical. The two products have virtually identical technical specifications. Garland Company failed to disclose that Government customers pay twice as much for Garla-Prime ($108.73) as private customers pay for Ultra-Shield Self-Stick Primer ($50.00).

#### b)   Garland Aero-Block WB and SB v. GMX Ultra-Shield WB and SB Waterproofing

38.     Both GMX and Garland sell WB and SB products. The GMX WB and SB products, called GMX Ultra-Shield, have descriptions strikingly similar to their Garland WB and SB counterparts, Garland Aero-Block. Garland Company failed to disclose that private customers pay $50.00 for Ultra-Shield WB Waterproofing and $60.00 for Ultra-Shield SB Waterproofing, for a 5 gallon pail, while Government customers pay $77.80 and $88.75, for 5 gallon pails, respectively, nearly 50% more.

#### c)   Garland Aero-Block SA v. GMX Ultra-Shield Self-Stick Membrane

39.     The product descriptions for Garland's Aero-Block SA and GMX's Ultra-Shield Self-Stick Membrane have identical phrasing throughout and the products have nearly identical

13

specifications. Garland Company failed to disclose that while private customers pay $115.00,

about half the price charged Government customers for the Ultra-Shield Self-Stick Membrane,

Government customers pay $219.45.

### d)  Garland Silver-Shield v. Commercial Viking Sun Shield Fibered

40.     The product descriptions for Garland Silver-Shield and Commercial Viking Sun

Shield Fibered are virtually identical, and their technical elements are almost exactly the same.

Garland Company fails to disclose that private customers pay $75.00 for a 5 gallon pail for GMX

Ultra Shield Fibered Aluminum, which is exactly the same or substantially similar to

Commercial Innovation's Viking Sun Shield Fibered product. Government customers pay

$234.41 for a 5 gallon Silver-Shield pail.

### e)  Commercial Innovations' Cool Topper v. Garland Company's Pyramic

41.     Other than a few small differences, the product sheets and technical specifications

for Commercial Innovations' Cool Topper and Garland's Pyramic are exactly the same. The Cool

Topper product is the same as or substantially similar to GMX's Ultra Shield Acrylic Coating,

for which private customers pay $175.00 for a 5 gallon pail. Government customers pay $255.36

for a 5 gallon pail of Garland Company Pyramic.

### f)  Commercial Innovations' Ultra-Shield Torch Base Membrane v. Garland's  HPR Torch Base Sheet

42.     Commercial Innovations' Ultra-Shield Torch Base Membrane and Garland's HPR

Torch Base Sheet have the exact same weight, dimensions (width/length), nominal thickness,

elongation, net coverage, and post-consumer recycled content. Garland Company failed to

disclose that private customers pay $150.00 for a square roll for Ultra-Shield Torch-Base

Membrane, compared to $202.49 for a square roll for the HPR Torch Base Sheet on the GSA Schedule.

43.    As a result of the inflated prices offered to Government customers, Defendants Garland Industries, Garland Company, Imetco, Design-Build Industries, Commercial Innovations, and GMX, presented or caused to be presented to the Government false claims for products and services purchased pursuant to Garland Company's GSA contracts or GSA negotiated pricing.

44.    Garland Company's representations and certifications that it was providing the Government customers "best value" relative to commercial customers were made with Defendants' actual knowledge of falsity, deliberate ignorance of the truth or falsity, or in reckless disregard of the truth or falsity.

45.    Federal customers paid substantially more than they otherwise would have were it not for Defendants' intentionally false pricing misrepresentations.

**D.    Garland Industries and Garland Company Manipulated Their Corporate Structure to Ensure that Private Customers Received Better Value than the Government.**

46.    Garland Company's contract with the GSA incorporates by reference a GSA regulation that prevents Government contractors from interfering with the commercial sales practices of their subcontractors when such interference "results in the Federal Government being treated differently from any other prospective purchaser for the sale of the commercial item(s)." 48 C.F.R. § 52.203 6 (Alternate I Oct 1995). A subcontractor is defined under the GSA regulations as "any supplier, distributor, vendor, or firm that furnishes supplies or services to or for a prime contractor or another subcontractor." 48 C.F.R. § 44.101.

15

47.    Garland Company stated in its contract with the Government that it would not restrict subcontractor sales to the Government where the result is that the Government is treated differently from other customers.

48.    Garland Company utilizes the power of its parent company, Garland Industries, to restrict the ability of Imetco, GMX, and Commercial Innovations to sell directly to the Government, resulting in inflated prices for Government customers. Imetco manufactures and supplies products for the GSA contract. Garland Company offers the products on the GSA Advantage website at significantly higher prices than the prices that Imetco, GMX, and Commercial Innovations offers to commercial customers.

49.    By preventing Imetco from offering those lower prices to the Government, Garland Company and Garland Industries interfered with the ability of a GSA subcontractor to offer its lower prices directly to the Government, in violation of Garland Company's contract with the Government and GSA regulations.

50.    Garland Company representations and certifications that it does not interfere with its subcontractors' sales to the Government and that this conduct does not result in the Government being treated differently in comparison to private customers, were made with Defendants' actual knowledge of falsity, deliberate ignorance of the truth or falsity, or in reckless disregard of the truth or falsity.

**E.    Garland Company Failed to Provide Accurate Pricing Information to the Government.**

51.    Garland Company represented and certified that its Federal Government pricing was based on the pricing it provided its commercial customers. These representations and certifications were made with actual knowledge of falsity, deliberate ignorance of the truth or

falsity, or in reckless disregard of the truth or falsity. Garland Company was aware that its

wholly-owned subsidiaries Imetco, Commercial Innovations, and GMX were charging lower

prices to commercial customers than Government customers for the same or substantially similar

items.

52.     As a result, by certifying that the Federal Government customers received the

"best price," Defendants presented or caused to be presented to the Government false claims for

products and services purchased by the Government pursuant to the GSA's purchasing systems.

53.     The Federal Government paid substantially more than it would have were it not

for Defendants' false representations that they fulfilled best pricing obligations under the GSA

Schedules.

**F.      Garland Company Failed to Offer the Federal Government Discounts
          Provided to Commercial Purchasers.**

54.     In addition to the requirement that a supplier's GSA pricing be based on

established catalog or market prices and then discounted pursuant to negotiations with the GSA,

the supplier must notify the Federal Government of reductions in the price charged to

commercial customers. If a supplier reduces the price it charges its non-Government customers,

it must report this reduction or discount and provide the same relative price reduction to the

Government. 48 C.F.R. §§ 538.273(b)(2), 552.238-75.

55.     Garland Company was obligated to provide the Government with most favorable

prices and terms and represented that it had done so. Garland Company regularly provided its

commercial customers with discounts and lower prices that it did not offer to Government

purchasers, without disclosing these price reductions to Government customers.

17

56.     Defendants presented or caused to be presented to the Federal Government false claims for products and services purchased pursuant to Garland Company's GSA contracts.

57.     As a result, Garland Company's representations and certifications that it provides the Government customers with discounts, the "best value" relative to commercial customers, and that it would report and provide any additional discounts given to private customers were made with actual knowledge of falsity, deliberate ignorance of the truth or falsity, or in reckless disregard of the truth or falsity.

58.     Federal Government customers paid substantially more than they otherwise would have were it not for Garland Company's intentionally false pricing misrepresentations.

**G.     Garland Industries' and Garland Company's Anti-Competitive Conduct Subverts the Government's Procurement Process.**

59.     Garland Industries and Garland Company manipulated their corporate structure to market and sell the same building products to the Government and private customers at different prices. Imetco, Commercial Innovations, and GMX, therefore, did not offer or provide their products for Federal Government jobs. Instead, Garland Industries and Garland Company reserved the right to insist upon inflated Garland Company-labeled products on public contracts, including GSA Schedule contracts.

60.     Relator's disclosure of Garland Industries' and Garland Company's scheme is based in part upon Relator Forsythe's experiences with the Garland Industries companies. On September 4, 2013, Forsythe Brothers Infrastructure LLC was awarded a contract to replace a roof on a Travis County, Texas municipal building in Austin, Texas.

61.     Relator's Travis County roof replacement project required installation of metal wall panels and a self-adhering roof. The contract specifications were extensive and designed

18

around products with a Garland Company label, with no opportunities to substitute other products.

62.     Despite the contract restrictions, John Forsythe sought quotes from Imetco because it was a manufacturing company that publicly marketed products that appeared identical or surprisingly similar to Garland Company products.

63.     The Imetco quote, provided by Imetco sales representative Lee Pruden, listed almost every product at half the price or less than the price Garland Company listed for the same or substantially similar product with a Garland label.

64.     Relator Forsythe attempted to use the less expensive Imetco-labeled products, rather than using the more expensive Garland-labeled products on the Travis County project. When John Forsythe placed an order for the Imetco Flat Sheet with Mr. Pruden, he was told that, "even if it was the same product" as the Garland-labeled version, "corporate policy" prevented Mr. Pruden from selling Imetco-labeled products on a "Garland" project. Quoting an Imetco product as a substitute for a Garland Company product, "gets me in big trouble," Mr. Pruden wrote to Mr. Forsythe.

65.     Defendants' anti-competitive conduct subverts the core procedures of the Government's procurement process, which the Government relies on to obtain the best price from a potential contractor.

66.     Underlying the entire Federal Supply Schedule negotiation process is the principle of fair competition. Generally, the Competition in Contracting Act (CICA) of 1984 requires that there be full and open competition in the Government's purchases of commercial products and services. 41 U.S. Code § 3301, 48 C.F.R. § 6.101. Garland's contract is recognized as

19

competitive if "orders and contracts under those procedures result in the lowest overall cost alternative to meet the needs of the Federal Government." 41 U.S.C. § 152.

67.     Garland Company falsely represented and certified that it offered the Government the lowest cost alternative, which would render its contract competitive. Such statements were made by Defendants with actual knowledge of falsity, deliberate ignorance of the truth or falsity, or in reckless disregard of the truth or falsity. As a result, Defendants submitted or caused to be submitted purchase orders that were false claims for payment.

68.     Furthermore, Garland's fraudulent conduct induced the Government to accept inflated prices. By hiding Imetco's prices from the Government and thereby shielding itself from the competitive process, Garland Company knowingly and fraudulently induced the Government to accept far higher prices.

**H.      Garland Company Misrepresented Services as Appropriate for the GSA Schedule.**

69.     Garland Company and Design-Build Solutions misrepresented their services as appropriate GSA Schedule services in order to avoid the stringent competitive bidding and accountability requirements for federal construction contracting.

70.     Construction services generally cannot be purchased through the GSA Schedule and GSA Advantage programs and, instead, must be competitively bid. 10 U.S.C. § 2305a; 41 U.S.C. § 3309; 48 C.F.R. § 36.103; 48 C.F.R. § 36.104.

71.     The Office of Federal Procurement Policy specified in a Memorandum that:

> ...Part 12 [regulating the GSA Schedule] should rarely, if ever, be used for new construction acquisitions or non-routine alteration and repair services...agencies should apply the policies of FAR Part 36 [regulating construction services] to these acquisitions...Part 12 generally may be suited for routine painting or carpeting, simple

> hanging of drywall...and other non-complex services, as well as for
> purchases of commercial construction material and associated
> ancillary services.

Memorandum, Applicability of FAR Part 12 to Construction Acquisitions (2003).

72.    Services offered under the GSA Schedule must be commercial items. 48 C.F.R. §
538.271. Services are commercial items if they are installation, maintenance, repair, training or
other services "...procured for support of an item..." that is offered on the GSA Schedule where
"the source of such services provides similar services contemporaneously to the general public
under terms and conditions similar to those offered to the Federal Government." 41 C.F.R. §
2.101.

73.    However, the majority of the services work Garland Company and Design-Build
Solutions performed for the Government were not commercial items, as their services were not
"...procured for support of an item..." that is offered on the GSA Schedule, nor were they
provided "...to the general public under terms and conditions similar to those offered to the
Federal Government." 41 C.F.R. § 2.10.

74.    Most Garland Company and Design-Build Solutions services provided under the
GSA Schedule were construction, roof replacement, and complex roof repair.

75.    When Garland Company and Design-Build Solutions replace Government roofs
and provide construction materials and services, such services are not commercial items because
construction and roof replacement services are not provided "for the support of" GSA Schedule
products. Instead, GSA Schedule products are provided in support of the construction and roof
replacement services.

76.     Garland Company and Design-Build Solutions services were not provided to the Government under similar terms and conditions, as private customers paid less for the same or similar services.

77.     Complex construction and roof repair services are likewise not commercial items, as they too are not provided to support GSA Schedule products, nor are they provided under similar terms and conditions as those provided to private customers.

78.     As a result, most of Garland Company and Design-Build Solutions' services do not satisfy GSA Schedule requirements.

79.     Garland Company and Design-Build Solutions' GSA Schedule services were often construction services. Their complex repair and roof replacement services are "construction, alteration or repair...of buildings, structures or other real property." 48 C.F.R. § 2.101. As a result, these services should have been competitively bid pursuant to FAR Part 36. See 48 C.F.R. § 36.103; 48 C.F.R. § 36.104.

80.     Garland Company and Design-Build Solution's submission of proposals to the Federal Government for complex construction projects that did not qualify as commercial items were made by Defendants with actual knowledge of falsity, deliberate ignorance of the truth or falsity, or in reckless disregard of the truth or falsity.

81.     As a result, Defendants submitted or caused to be submitted purchase orders that were false claims for payment.

## COUNT I
### False Claims Act - Presentation of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

82.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

83.    Through the acts described above and otherwise, Defendants and their agents and employees knowingly presented or caused to be presented to the United States Government false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

84.    As a result of Defendants' conduct, the United States Government has been harmed by an amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT II
### False Claims Act - Making or Using False Records or Statements
### to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

85.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

86.    Through the acts described above and otherwise, Defendants and their agents and employees knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B), in order to get false or fraudulent claims paid and approved by the United States Government.

87.    As a result of Defendants' conduct, the United States Government has been harmed by an amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT III
### False Claims Act - Making or Using False Records or Statements to Conceal, Avoid and Decrease Obligation to Repay Money
### 31 U.S.C. § 3729(a)(1)(G)

88.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

89.    Through the acts described above and otherwise, in violation of 31 U.S.C. § 3729(a)(1)(G), Defendants and their agents and employees knowingly made, used, or caused to be made or used false records and statements to conceal, avoid, and decrease Defendants' obligation to repay money to the United States Government that Defendants improperly or fraudulently received. Defendants also failed to disclose material facts that would have resulted in substantial repayments to the United States Government.

90.    As a result of Defendants' conduct, the United States Government has been harmed by an amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT IV
### False Claims Act - Conspiracy
### 31 U.S.C. § 3729(a)(1)(c)

91.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

92.    Through the acts described above and otherwise, Garland Industries, Garland Company, Imetco, Commercial Innovations, GMX, and Design-Build Solutions entered into a conspiracy or conspiracies to defraud the United States by getting false or fraudulent claims allowed or paid in violation of 31 U.S.C. § 3729(a)(1)(c). Garland Industries, Garland Company, Imetco, Commercial Innovations, GMX, and Design-Build Solutions conspired to omit

24

disclosing or to actively conceal facts which, if known, would have reduced Government

obligations to it or resulted in repayments from it to Government programs.

93.    Garland Industries, Garland Company, Imetco, Commercial Innovations, GMX,

and Design-Build Solutions and their agents and employees have taken substantial steps in

furtherance of those conspiracies, inter alia, by preparing false records, by submitting claims for

reimbursement to the Government for payment or approval, and by directing their agents and

personnel not to disclose and/or conceal their fraudulent practices.

## REQUEST FOR RELIEF

WHEREFORE, Relator John Forsythe requests that judgment be entered against

Defendants Garland Industries, Inc., The Garland Company, Inc., Imetco, Inc., Design-Build

Solutions, Inc., GMX, Inc., and Commercial Innovations, ordering that:

1.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729,

*et seq.*;

2.    The Court enter judgment against Defendants in an amount equal to three (3) times

the amount of damages the United States Government and the States and their subdivisions have

sustained as a result of Defendants' actions;

3.    The Court enter a civil penalty against each Defendant of at least $10,781 for each

violation of 31 U.S.C. § 3729, as upwardly adjusted;

4.    Relator be awarded the maximum amount allowed pursuant to the False Claims Act,

31 U.S.C. § 3730(d);

5.    Relator be awarded all costs and expenses of this action, including attorneys' fees, pursuant to 31 U.S.C. § 3730(d);

6.    Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct; and

7.    The United States, the States and their subdivisions and Relator recover all such other relief as the Court deems just and proper.

Respectfully submitted,

Mark Hanna (DC Bar No. 471960)
Michelle Cassorla (DC Bar No. 1022193)
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Phone: 202-223-2620
Fax: 202-296-9600
*mhanna@murphypllc.com*
*mcassorla@murphypllc.com*

Ann Lugbill (DC Bar No. 462850)
Murphy Anderson PLLC
2406 Auburn Avenue
Cincinnati, OH  45219
Phone:  513 784 1280
Fax: 877-784-1449
****
1401 K Street, NW, Suite 300
Washington, DC 20005
Phone: 202-223-2620
Fax: 202-296-9600
*alugbill@murphypllc.com*

26

Ann-Marie Ahern
McCarthy, Lebit, Crystal & Liffman Co., LPA
101 West Prospect Avenue, Suite 1800
Cleveland, OH 44115
Phone: 216-696-1422
Fax: 216-696-1210
*ama@mccarthylebit.com*

**Attorneys for Plaintiff Relator John Forsythe**

### REQUEST FOR TRIAL BY JURY

Relator hereby demands a trial by jury.

Counsel for Relator

CERTIFICATE OF SERVICE

I hereby certify that on this ___6___ day of January 2017, a copy of the foregoing Amended Complaint shall be served upon the following individuals as indicated below.

Mark Hanna (DC Bar No. 471960)
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC 20005
Phone: 202-223-2620
Fax: 202-296-9600
*mhanna@murphypllc.com*

**Relator's Counsel - via regular U.S. Mail:**

Ann Lugbill (DC Bar No. 462850)
Murphy Anderson PLLC
2406 Auburn Avenue
Cincinnati, OH 45219
Phone: 513-784-1280
Fax: 877-784-1449
*alugbill@murphypllc.com*

Ann-Marie Ahern
McCarthy, Lebit, Crystal & Liffman Co., L.P.A.
101 West Prospect Avenue, Suite 1800
Cleveland, OH 44115
Phone: 216-696-1422
Fax: 216-696-1210
*ama@mccarthylebit.com*

**U.S. Department of Justice - via regular U.S. Mail:**

Arnold M. Auerhan
U.S. Department of Justice, Civil Division
P.O. Box 261
Ben Franklin Station
Washington, DC 20044

Darrell C. Valdez
Assistant United States Attorney
U.S. Attorney's Office for the
 District of Columbia, Civil Division
555 Fourth Street, N.W., Room E-4915
Washington, DC 20530
Phone: 202-252-2507
*darrell.valdez@usdoj.gov*

28